UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOSES KEON WILLIAMS,

                    Petitioner,                    Case Number 09-13106
                                                   Honorable David M. Lawson

v.

JEFFREY WOODS,

                    Respondent,
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Moses Keon Williams is in the custody of the Michigan Department of Corrections serving a 25-to-50-year sentence for second-degree murder.  He is serving additional sentences for the related offenses of carrying a concealed weapon and possession of a firearm in the commission of a felony (felony-firearm).  Williams filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 alleging that he was deprived of his right to present a defense, the effective assistance of counsel, and a fair trial because of prosecutorial misconduct.  The respondent filed an answer to the petition arguing that some of the claims were not preserved properly and all lack merit.  The Court finds that the claims lack merit and therefore will deny the petition.

I.

The petitioner was convicted at a jury trial in the Genesee County, Michigan circuit court in which he was tried jointly but by separate juries with his codefendant Tommy Tiggs.  The facts of the case were set out by the Michigan Court of Appeals as follows:

> Defendant's convictions arise from the April 5, 2004, shooting death of Edward Beasley, who died of multiple gunshot wounds inflicted while he sat in the driver's seat of his Cadillac.  While inside the Cadillac with Beasley, defendant, and codefendant Tommy Louis Tiggs, witness Carole Cooper heard either defendant or Tiggs say "Is you ready."  According to Cooper, Tiggs then got out of the car and a

gunshot was fired. Cooper testified that she then turned around and saw Tiggs with a gun. She stated that the gun jammed while Tiggs was attempting to fire a second shot. Cooper indicated that she then saw defendant standing behind the car and shooting through the back window of the vehicle. Cooper did not know whether Tiggs or defendant was the person who said "Is you ready." The evidence showed that the bullets extracted from Beasley's body had been fired from both Tiggs's gun and defendant's gun.

Cooper selected defendant's picture from a photo array. Cellular phone records confirmed that several calls were placed between defendant's phone and Cooper's phone on the day of the shooting. Beasley had been using Cooper's phone in an attempt to sell his Cadillac to defendant. Cellular phone records further confirmed two calls immediately before the shooting, made by defendant to verify Beasley's title to the vehicle. After the shooting, Tiggs's uncle called defendant's cellular phone and asked the man who answered if "one of you guys killed my nephew." The man responded, "yep, and you gonna be next."

*People v. Williams*, No. 260502, 2006 WL 2000101, at * 1 (Mich. Ct. App. July 18, 2006).

The petitioner attempted to offer an alibi defense at trial, but the trial judge barred his proposed witness because her identity was disclosed too late. The petitioner did not testify on his own behalf in support of that defense. The petitioner also attempted to introduce evidence that drugs and guns were seized from the victim's residence the day after the shooting, but that evidence was excluded as irrelevant.

The petitioner's conviction was affirmed on appeal. *People v. Williams*, 2006 WL 2000101, *lv. to appeal den.* 477 Mich. 946, 723 N.W.2d 843 (2006). He then filed a post-conviction motion for relief from judgment under Michigan Court Rule 6.500, which the trial court denied on December 7, 2007. The Michigan appellate courts denied leave to appeal. *People v. Williams*, No. 282947 (Mich. Ct. App. Aug. 13, 2008), *lv. to appeal den.* 483 Mich. 913, 762 N.W.2d 515 (2009).

The petitioner seeks a writ of habeas corpus on the following grounds:

I.      The trial court abused its discretion when it failed to permit the defense from calling an alibi witness, thereby violating the petitioner's Sixth Amendment

rights to the protections of the compulsory process clause, i.e. right to present a defense.

II.     Trial counsel violated the petitioner's Sixth Amendment rights to the effective assistance of counsel by failing to: request an investigator for, or continuance relative to, the addition of the petitioner's alibi witness; request a jury instruction relative to Mrs. Cooper's narcotic use; investigate or call Germaine Ross, i.e. exculpatory witnesses.

III.    The trial court's denial of the petitioner's motion for relief from judgment was clear error derived from the improper use of a state rule to prevent review of Sixth Amendment claims, and based in part on an unreasonable determination of the facts needed to establish "cause and prejudice," and due process violation.

Pet. at 4-7.  The petitioner also has asked the Court to "remand" the case to state court for an evidentiary hearing on his ineffective assistance of counsel claims.  The respondent filed an answer contesting the merits and raising a procedural default defense to some of the issues.

The Court does not find it necessary to address the question of procedural default. It is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  Application of a procedural bar would not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  As amended, 28 U.S.C. § 2254(d) permits a federal

-3-

court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

-4-

unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its unanimous decision two terms ago in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Sixth Circuit observed recently that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012). The *Peak* court suggested that *Richter* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Ibid*.

   The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state court rulings, and demands that state court decisions be "given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, ---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise,

and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Peak*, 673 F.3d at 473-74; *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

<div align="center">A.</div>

The petitioner first argues that he was denied his federal constitutional right to compulsory process and his right to present a defense because the trial court judge would not allow him to present alibi witness Kessa Peters.  His witness was excluded because he did not file a timely alibi notice required by state procedural rules.  Under Michigan law, a defendant intending to assert the defense of alibi must file and serve a written notice "not less than 10 days before the trial of the case, or at such other time as the court directs."  Mich. Comp. Laws § 768.20(1).  The notice must include "the names of witnesses to be called in behalf of the defendant to establish that defense" and "specific information as to the place at which the accused claims to have been at the time of the alleged offense."  *Ibid.*

The petitioner's trial was scheduled to begin December 7, 2004.  At a pretrial conference conducted on December 3, 2004, trial counsel informed the judge that he had been given notice by the petitioner that he had an alibi witness, but counsel had declined to endorse her as a witness until

he actually spoke with her.  Counsel indicated that at about 7:45 that morning he had finally spoken with potential witness Kessa Peters, whom he had tried to contact for the previous couple of weeks. Counsel spelled her name, gave a date of birth, and informed the judge and prosecutor that Ms. Peters lived in Columbus, Ohio but did not have a telephone.  Ms. Peters had informed counsel that the petitioner was with her in Columbus, Ohio from April 1 through April 11, 2004, which would have provided an alibi for the crime, which took place on April 5 in Flint, Michigan.  Counsel stated that he had given Ms. Peters the telephone number for Sergeant Besson, the officer in charge of the case, so that she could contact the detective.  Defense counsel admitted that he had not given the prosecution the required ten-day notice of his proposed alibi witness, but the prosecutor agreed that if Ms. Peters would contact Sergeant Besson before Monday afternoon (the day before trial), the prosecutor would not object to the witness.

On the first day of trial, the prosecutor acknowledged that defense counsel had given her a verbal notice of alibi at the pretrial conference four days earlier, and the agreement to waive objection to the late notice if the witness contacted the officer in charge of the case.  The prosecutor reported that a person claiming to be Ms. Peters called Sergeant Besson on the telephone at about 3:51 p.m. the day before trial and had left a vague message indicating that "she'd testify that [the petitioner] was with her during a certain time frame."  The prosecutor objected to the witness testifying because the call came after 3:00 p.m., the witness did not provide an address or telephone number, and therefore the officer in charge of the case had insufficient time or means to reach the witness or investigate her story.  Defense counsel stated that he had spoken with the petitioner's mother, who told him attempts had been made to contact Sergeant Besson both on Friday and over the weekend.  Defense counsel informed the judge that the witness was still in Ohio and that he had

no way to contact her.  Defense counsel asked the judge to give him until Thursday, December 8, 2004, to produce the witness.  The judge ruled that the petitioner would not be allowed to call Ms. Peters as an alibi witness, but also prohibited the prosecutor from commenting on the petitioner's failure to produce corroborating witnesses if he wished to present an alibi defense.

The petitioner challenged the trial judge's preclusion order on direct appeal.  The Michigan Court of Appeals rejected the petitioner's claim, stating:

> Here, the trial court did not abuse its discretion by denying defendant's request to present an alibi witness.  Defense counsel did not indicate an intent to call Peters as an alibi witness until four days before trial.  Nevertheless, the prosecutor was willing to excuse the late notice if Peters contacted Sergeant Jennifer Besson, the officer in charge of the case, by 3:00 p.m. on the day before trial.  Peters failed to contact Besson by the designated time, but thereafter left a message indicating that she would testify that defendant was with her in Columbus, Ohio, at the time of the shooting. The prosecutor indicated that Peters's untimely message was inacceptable [sic] because it did not allow Besson sufficient time to investigate the alibi claim. The prosecutor further indicated that because Peters did not have a telephone and did not provide an address, she had no way of getting in touch with Peters or sending an officer to contact her.  Thus, the prosecutor stated that she had no way of adequately investigating the defense.
>
> The prosecutor's argument at trial evidences the prejudice resulting from the late disclosure of alibi witnesses.  The prosecutor was unaware of the specifics of Peters's purported testimony and, without any way to contact Peters, the prosecutor had no means of investigating the claimed alibi defense or ascertaining the details of Peters's testimony before she testified.  The trial court acknowledged the prejudice to the prosecutor when it denied defendant's request.  Defendant's argument that he was denied the opportunity to present a defense fails because he could have presented other witnesses or testified himself in support of his asserted alibi defense. In fact, the trial court explicitly ruled that if defendant chose to present his alibi defense in Peters's absence, the prosecutor could not comment on his failure to produce corroborating witnesses.  The trial court adequately protected defendant's rights and did not deny defendant the opportunity to present a defense.
>
> *People v. Williams*, 2006 WL 2000101, at *2.

An accused person's right to call witnesses and present a defense is considered "fundamental" to our adversarial criminal justice system, *Washington v. Texas*, 388 U.S. 14, 19

(1967), and derives from both the Due Process Clause and the Sixth Amendment, *id.* at 18. *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986) (proclaiming that "whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (citations omitted).   However, that right, like most others under our Constitution, "is subject to reasonable restrictions. *United States v. Scheffer*, 523 U.S. 303, 308 (1998). The Supreme Court has explained that a defendant's right to present evidence sometimes must "'bow to accommodate other legitimate interests in the criminal trial process.'" *Rock v. Arkansas*, 483 U.S. 44, 55 (1987) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1974)).   Rules requiring fair notice of witness identity, designed to protect the integrity of the trial process, are allowed, and preclusion sanctions can be used in some instances to enforce those rules without violating the Constitution. *Taylor v. Illinois*, 484 U.S. 400, 410-11 (1988) (observing that "[t]he trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony"). "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308 (quoting *Rock*, 483 U.S. at 56).

In *Taylor,* the Supreme Court held that before precluding a witness from testifying, courts must balance the defendant's right to call the witness against "countervailing public interests", which include "the integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth determining function of the trial process." *Taylor*, 484 U.S. at 414-15. Willful violations of the rules, especially when a party seeks

a tactical advantage, will justify preclusion. *Id.* at 415.  The Court has recognized that the prosecution has an interest in "protecting itself against an eleventh hour defense."  *Id.* at 412 (quoting *Williams v. Florida*, 399 U.S. 78, 81-82 (1970)).

The Michigan courts' decision barring the petitioner from calling Kessa Peters did not unreasonably apply these precedents.  The petitioner acknowledges that he failed to comply with the state statute requiring a written alibi notice within ten days of trial.  Even then, however, the court, with the consent of the prosecutor, agreed to relax the rule and permit Ms. Peters to testify as long as the prosecutor had a fair opportunity to interview her and investigate her statement.  The witness did not cooperate, however, making a half-hearted attempt to contact the investigating officer and failing to leave any contact information.  The State was willing to accept the petitioner's eleventh-hour defense; it just was not willing to extend the curfew to 11:30.

The state courts weighed the prejudice to the prosecutor against the importance of the witness to the defense.  Carole Cooper's identification of the petitioner was subject to question, which would have heightened the importance of evidence that the petitioner was several hundred miles away at the time of the shooting.  But cell phone records put the petitioner in the same city as the shooting at the critical time, which would have undercut his alibi and potentiated the prosecutor's need to investigate the genuineness of the alibi defense.  The state courts' enforcement of the preclusion sanction was not arbitrary.  Rather, it was intended to vindicate "'[t]he State's interest in the orderly conduct of a criminal trial.'"  *Bell v. Jackson,* 379 F. App'x 440, 447-48 (6th Cir. 2010) (quoting *Taylor*, 484 U.S. at 411).  There was no constitutional violation.  *See Wade v. Herbert,* 391 F.3d 135, 142-43 (2d Cir. 2004) (finding no constitutional violation from preclusion of witness when alibi notice was made on the eve of trial under circumstances suggesting a

-10-

substantial risk that alibi was fabricated); *Watley v. Williams,* 218 F.3d 1156, 1159-60 (10th Cir. 2000) (state appellate court reasonably applied *Taylor* in upholding the exclusion of alibi testimony for the violation of a state rule by not listing a witness as an alibi witness, even though the witness was on a list of potential witnesses and counsel's failure to list him on the alibi list was inadvertent).

The petitioner cites *Noble v. Kelly,* 89 F. Supp. 2d 443 (S.D.N.Y. 2000); *aff'd* 246 F.3d 93 (2d Cir. 2001), in support of his claim.  There, the court granted a writ of habeas corpus where the state court enforced the state's alibi notice rule by precluding defense witnesses from testifying.  The federal court held that the state court failed to consider whether defense counsel's failure to follow the notice rule was willful.  89 F. Supp. 2d at 457.  On appeal, the Second Circuit affirmed because it believed that a less drastic sanction than preclusion would have served the state's interests, holding that preclusion was not appropriate absent some degree of willfulness in violating the notice rule.  *Noble*, 246 F.3d at 100 n.3.  That case does not provide much guidance, as it was decided before the Supreme Court emphasized the degree of discretion federal courts must afford state court decisions on habeas review.  *See, e.g. Renico v. Lett*, 130 S. Ct. at 1862 (requiring that state courts must be "given the benefit of the doubt" in habeas proceedings).  When the state courts identify the relevant factors that must be weighed, striking a balance in close cases such as this one invokes a question on which fairminded jurists could disagree.  *Harrington*, 131 S. Ct. at 785-86.  Applying the Supreme Court's current view of AEDPA's habeas standard, this Court cannot conclude that the petitioner is entitled to relief under 28 U.S.C. § 2254(d).

## B.

The petitioner alleges that his trial and appellate attorneys did not provide constitutionally adequate assistance for a number of reasons.  The two-pronged test set forth in *Strickland v.*

-11-

*Washington*, 466 U.S. 668 (1984), governs the Court's analysis of ineffective-assistance-of-counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "To establish ineffective assistance of counsel 'a defendant must show both deficient performance by counsel and prejudice.'" *Premo v. Moore*, --- U.S. ---, ---, 131 S. Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

Because of the high deference accorded state court determinations by AEDPA, establishing that counsel was ineffective and, therefore, the petitioner was denied his right to counsel under the Sixth Amendment, is difficult. The Supreme Court explained recently:

> "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ---, ---, 130 S. Ct. 1473, 1485 (2010). . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. *Ibid.* Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 131 S. Ct. at 788.

On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Moreover, "because the *Strickland* standard is a general

-12-

standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Ibid.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The petitioner contends that his trial counsel was ineffective by failing to request the assistance of an investigator to locate alibi witness Kessa Peters and failing to request a continuance from the trial judge to allow the police additional time to investigate the petitioner's alibi defense. The state court of appeals addressed those claims on direct appeal based on the trial court record, because the petitioner did not ask for an evidentiary hearing in the trial court or move the court of appeals to remand. The petitioner also argues that trial counsel was ineffective by failing to file a timely alibi notice with Ms. Peters' name, which would have protected the petitioner's right to call her to testify at trial, and that appellate counsel was ineffective by failing to allege as error on direct appeal trial counsel's failure to file the alibi notice. He also contends that appellate counsel was ineffective by failing to request an evidentiary hearing on trial counsel's ineffectiveness. Those arguments were presented to the state court in a post-conviction motion.

Counsels' alleged errors dealing with the alibi notice and Ms. Peters as an alibi witness can all be resolved by focusing on the prejudice prong of the *Strickland* test. When assessing the impact of an omitted trial witness, it is always helpful to know what the witness would have had to say at trial. The Supreme Court held in *Pinholster* that for a petitioner to show a "reasonable probability" of a different result due to counsel's deficient performance, he must establish a "substantial" not just "conceivable" likelihood of a different result. 131 S. Ct. at 1403 (quoting *Richter*, 131 S. Ct. at 791).

Here, the petitioner never attached any affidavit from Ms. Peters concerning her proposed testimony to *any* of his state court papers on direct appeal or requests for post-conviction relief. The

-13-

petitioner has not provided this Court with any affidavit from Ms. Peters, either.  There is no evidence in any court record describing Ms. Peters's proposed testimony and willingness to testify on the petitioner's behalf.  Conclusory allegations without any evidentiary support do not provide a basis for habeas relief, *see Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998), nor do they provide a sufficient basis on which to grant an evidentiary hearing in a habeas proceeding, *see, e.g.*, *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006).  Because he failed to present any evidence to the state courts in support of his ineffective assistance of claim, the petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim in this Court.  *Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)).  In the absence of proof of the testimony the absent witness would have furnished, the petitioner is unable to establish that he was prejudiced by counsel's failure to call Ms. Peters to testify at trial.  *See Clark v. Waller*, 490 F.3d 551*,* 557 (6th Cir. 2007).

In addition, the glaring absence of proof from the petitioner is magnified by the trial evidence against him.  As the Michigan Court of Appeals pointed out, the petitioner's cellular phone records tended to show that he was not in Ohio on the day of the shooting, but was in the Flint area.  Jennifer DeMaria of Cricket Communications, the petitioner's cell phone service provider, testified that her company is a local cellular phone company that does not offer roaming service outside the local area.  DeMaria described her company's local calling area as tracing an approximate thirty-mile diameter with Flint at the center.  She also said that several phone calls were made to and from the petitioner's cell phone to Carole Cooper's telephone on April 4 and April 5, 2004.  Two phone calls were made from that cell phone to the land-line phone number that was required to set up the cellular telephone account, which also happened to be the telephone number for the petitioner's aunt,

-14-

Wanda Hawkins, a fact that undercut the petitioner's argument that a stranger had obtained and used his telephone.

With that evidence, coupled with Cooper's identification of the petitioner as one of the shooters, it is difficult for this Court to conclude that Ms. Peters's testimony would have altered the outcome of the trial. The failure to show prejudice precludes habeas relief on this claim. *See Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004).

Next, the Michigan Court of Appeals's decision that no Sixth Amendment violation resulted from trial counsel's failure to request a continuance reasonably applied federal law. That court observed that defense counsel did ask the trial judge to give him until December 8, 2004 to secure Peters' presence at trial, but the trial judge denied the request. In light of the trial judge's denial of that request, the petitioner cannot show that trial counsel would have been successful in obtaining a continuance of the trial.

The petitioner next contends that trial counsel was ineffective by failing to request a jury instruction that Cooper's testimony should be considered more cautiously than it would the testimony of an ordinary witness, because she was an addict-informant. The Michigan Court of Appeals rejected that claim on the ground that although Cooper had testified that she had been using cocaine and alcohol, there was no evidence presented that she was an addict. Because the evidence did not show that Cooper was a drug addict, an addict-informant instruction would not have been proper. Counsel was therefore not ineffective in failing to request such an instruction. The state court's decision on the propriety of the jury instruction is a matter of state law that this Court is bound to follow. *Strayhorn v. Booker,* 718 F. Supp. 2d 846, 870 (E.D. Mich. 2010) (internal citations omitted). That leads to the conclusion that counsel was not ineffective by failing to request

-15-

an instruction that would not have been proper under state law.  *Ibid.*; *see also Mitzel v. Tate*, 267 F.3d 524, 538 (6th Cir. 2001).

The petitioner next contends that trial counsel was ineffective by failing to call Germaine Ross as a witness.  The petitioner contends that Ross would have contradicted several features of Cooper's testimony.  However, although trial counsel did not call Ross as a witness, he successfully elicited testimony from Sergeant Besson describing the information Ross would have provided.  For instance, Ross told Besson that Carole Cooper earlier pinned the shooting on another: Tommy Williams, a/k/a "Big Tommy," who fired the fatal shots with co-defendant, Tommy Tiggs, a/k/a "Little Tommy."  Also, Sergeant Besson acknowledged that Ross never mentioned that Cooper subsequently cleared up her confusion about the suspects; that contradicted Cooper's testimony that she attempted to clarify to Ross that only "Little Tommy" and not "Big Tommy," whom she also referred to as the "father" and the "son," were involved in the shooting.  In addition, trial counsel elicited admissions from Cooper on cross-examination that she had been smoking cocaine and drinking alcohol with the victim just before the shooting.  Cooper also admitted that she had never seen the petitioner in the neighborhood and did not know him before the night in question, and that when the police attempted to make a composite sketch of the suspect, she was unable to give the police a description that even approximated the suspect's appearance.  Cooper acknowledged that she only picked the petitioner out of a photographic lineup some six weeks after the shooting.  She never identified the petitioner from a live lineup.  Trial counsel in his closing argument brought out all that testimony to attack Cooper's credibility, further noting that her statement  that she and the victim had stopped using cocaine several hours prior to the shooting was refuted by the medical examiner's testimony that the victim's blood was "loaded" with cocaine.

-16-

Once again, the record suggests that Ross's testimony would not have made a difference. Unproduced impeachment evidence is considered cumulative "when the witness has already been sufficiently impeached at trial." *Davis v. Booker*, 589 F.3d 302, 309 (6th Cir. 2009) (quoting *Brown v. Smith*, 551 F.3d 424, 433-34 (6th Cir. 2008)).   The petitioner has not shown prejudice on this claim.

The petitioner next argues that appellate counsel was ineffective by failing to raise a claim on direct appeal that the trial judge gave coercive instructions to the jury after they had begun deliberating and that his trial counsel was absent during this critical stage of the proceedings.  The record does not support that contention.

The petitioner has attached a letter from his appellate attorney to him dated December 9, 2005, in which appellate counsel wrote that trial counsel told him that the trial judge had made a reference to never having a hung jury.  However, appellate counsel also told the petitioner that there was nothing in the trial record or from trial counsel to indicate that such a comment was either heard by the jury or that it influenced their decision.  This Court's review of the relevant parts of the trial record disclosed no such statement from the trial judge.  Nowhere in the record is there any indication that the judge made any coercive remarks to the jurors or that trial counsel was absent when the judge was instructing the jury.  There can be no claim of ineffective assistance here; "appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

The petitioner lastly claims that appellate counsel was ineffective by failing to raise several claims of prosecutorial misconduct on direct appeal.  As explained below, the petitioner's

prosecutorial misconduct claims are without merit. Therefore, appellate counsel was not ineffective by failing to raise those claims on the petitioner's appeal of right. The petitioner has failed to show that he was deprived of the effective assistance of trial or appellate counsel.

C.

In his rejected motion for relief from judgment, the petitioner argued that he was denied his right to present a defense when the trial judge refused to allow defense counsel to introduce evidence that drugs and a shotgun had been seized from the victim's house by the police the day after the murder. The judge ruled that the evidence was irrelevant; for instance, the evidence at trial established that a shotgun had not been used in the murder. The petitioner contends that the evidence would have shown the involvement of other persons with the victim, and might have suggested that another person committed the murder.

Evidence of third party culpability is generally not admissible unless it is coupled with substantial evidence tending to connect the third person with the actual commission of the offense. *See Andrews v. Stegall,* 11 F. App'x 394, 396 (6th Cir. 2001) (citing *Walters v. McCormick*, 122 F.3d 1172, 1177 (9th Cir. 1997)). The petitioner has presented no evidence to suggest that any of the items seized from the victim's house would have established that someone else committed the murder. There was no information that the victim was involved in a drug deal gone bad, and the shotgun was not the type of firearm used during the murder. The exclusion of any evidence that drugs and a shotgun had been seized from the victim's house did not deprive the petitioner of his right to present a defense. *Andrews,* 11 F. App'x at 394-95.

The petitioner also argued in his post-conviction motion that he was deprived of a fair trial because of prosecutorial misconduct. "Claims of prosecutorial misconduct are reviewed

-18-

deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(*citing Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct will form the basis for habeas relief only if it was so egregious that it rendered the trial fundamentally unfair. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (*quoting Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

"The Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (*quoting Donnelly*, 416 U.S. at 645).

The petitioner argues here that the prosecutor failed to disclose until trial a hair sample that had been retrieved from the car in which the victim was shot, as well as reports, sketches, photographs, and tests that had been conducted by the police concerning the crime. But no constitutional violation resulted. "It is well settled that there is no general constitutional right to discovery in a criminal case." *Stadler v. Curtin*, 682 F. Supp. 2d 807, 818 (E.D. Mich. 2010) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988)). A claim that a prosecutor violated state discovery rules is not cognizable in federal

-19-

habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle,* 291 F.3d 416, 441 (6th Cir. 2002).

The late disclosure did not abridge the petitioner's due process rights.  Of course, suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  But the evidence was disclosed to the petitioner during trial.  *Brady* generally does not apply to the delayed disclosure of exculpatory information, but only to a complete failure by the prosecutor to disclose such information.  *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (internal citations omitted).  If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant is prejudiced by its nondisclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986); *see also United States v. Benc*s, 28 F.3d 555, 560-61 (6th Cir. 1994).  The Sixth Circuit noted that "the Supreme Court rejected the claim that the duty to disclose hinges on the usefulness of the material to pretrial preparation.  Such a standard would 'necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense.'"  *Id.* at 560  n.5 (quoting *United States v. Agurs*, 427 U.S. 97, 112 n.20 (1976)).

Moreover, the petitioner has not shown that any of this evidence contained exculpatory material.  The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998).  "[M]ere speculation that a government file may contain *Brady* material is not sufficient" to prove

-20-

a due-process violation. *United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir.1992), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir.1999).

The petitioner next contends that the prosecutor misrepresented the facts in this case. Such misrepresentation can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000) (quoting *Donnelly*, 416 U.S. at 646). Likewise, it is improper for a prosecutor during closing arguments to assert "facts" that have not been introduced into evidence. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Ibid.*

The petitioner contends that the prosecutor misstated that one shotgun had been seized from the victim's house the day after the murder, when in fact three shotguns had been seized. The trial judge ruled that the facts surrounding the seizure of the shotgun were irrelevant because no shotgun had been used in the murder. It is not apparent how the number of shotguns found at the victim's house would have had a bearing on the issues before the jury, and the petitioner has not explained the connection. The Court must conclude that the petitioner was not prejudiced by the prosecutor's misstatement.

The petitioner next contends that the prosecutor during closing arguments misrepresented the facts by arguing that Officer Murphy's testimony corroborated Carole Cooper's testimony. Murphy testified that he found three shell casings on Bishop Street, some distance from where the victim's Cadillac was found. The prosecutor argued that was consistent with Cooper's testimony that the shooting occurred away from where the Cadillac stopped. That was fair comment on the evidence by the prosecutor.

The petitioner argues that the prosecutor misrepresented the facts by claiming that the co-defendant and the petitioner were arrested together, when in fact the two men had not been arrested together. The petitioner has not shown how he was prejudiced by those remarks.

The petitioner contends that the prosecutor engaged in improper argument by stating that evidence of the co-defendant's guilt could be considered by the jury in determining the petitioner's guilt and that Ms. Cooper's identification of the co-defendant corroborated her identification of the petitioner. Those statements were incorrect, but any prejudice was ameliorated by the trial judge's instruction to the jurors that the fact that the petitioner and the co-defendant were on trial together was not evidence that the two men were associated with one another or that either one was guilty, and each defendant was entitled to have the case decided on the evidence and the law that applies to him. No constitutional violation resulted from those remarks. *United States v. Bond*, 22 F.3d 662, 670 (6th Cir. 1994).

Relatedly, the petitioner alleges that the prosecutor several times alluded to the co-defendant's inadmissible statements to suggest the petitioner's guilt. The Court's review of the record cited by the petitioner — Tr. Dec. 10, 2004, pp. 52-53, 73, 92 —  does not disclose any comments that could be found to suggest that the jury should use that evidence against the petitioner. That argument lacks merit.

The petitioner also argues that the prosecutor vouched for Ms. Cooper's credibility. A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of witnesses; that "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell*, 181 F.3d at 737 (citations omitted). However, a prosecutor is free to argue that the jury should

arrive at a particular conclusion based upon the record evidence. *Ibid.* Improper vouching occurs when the jury reasonably could believe that the prosecutor was expressing a personal belief in the witness's credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999) (citations omitted); *see also Griffin v. Berghuis*, 298 F. Supp. 2d 663, 674-75 (E.D. Mich. 2004).

In the present case, the prosecutor argued that Ms. Cooper was credible because her testimony was supported by testimony that had been given by other witnesses. When viewed in context, the prosecutor's comments were based on the record evidence and not on her personal belief concerning the evidence. The prosecutor did not assert or imply that she had any special knowledge apart from the record evidence to believe that the petitioner was guilty or the prosecution witnesses were testifying truthfully. The petitioner has not shown that the prosecutor engaged in improper vouching.

Moreover, the trial judge instructed the jury that the prosecutor's arguments were not evidence. The judge instructed the jury on the factors to consider in evaluating the credibility of the witnesses' testimony. *Byrd*, 209 F.3d at 537-38. The petitioner is not entitled to habeas relief on his prosecutorial misconduct claims.

### D.

The petitioner argues as part of his third habeas claim that he was wrongly denied post-conviction relief by the state courts. "[T]he Sixth Circuit consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v.*

*Palmer,* 484 F.3d 844, 853 (6th Cir. 2007). States have no constitutional obligation to provide post-conviction remedies. *Greer,* 264 F.3d at 681 (citing *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)). Challenges to state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *Kirby v. Dutton,* 794 F.2d 245, 246 (6th Cir. 1986)(quoting *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973)). "A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not 'result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.'" *Cress,* 484 F.3d at 853 (quoting *Kirby,* 794 F.2d at 247). Therefore, the "'scope of the writ'" does not encompass a "'second tier of complaints about deficiencies in state post-conviction proceedings.'" *Ibid.* (quoting *Kirby,* 794 F.2d at 248). "[T]he writ is not the proper means to challenge collateral matters as opposed to the underlying state conviction giving rise to the prisoner's incarceration." *Ibid.* (internal quotation marks omitted). The petitioner is not entitled to habeas relief on this claim.

III.

The petitioner also has filed a motion for appointment of counsel. There is no constitutional right to counsel in habeas proceedings. *Cobas v. Burgess,* 306 F.3d 441, 444 (6th Cir. 2002). The Court's disposition of the petition renders that motion moot. The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable

-24-

determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

**IT IS FURTHER ORDERED** that the application for the appointment of counsel [dkt # 2] is **DENIED.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   February 20, 2013

<div style="border:1px solid">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 20, 2013.

s/Deborah R. Tofil
DEBORAH R. TOFIL

</div>